

35

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                      Plaintiff,

v.

**INSURANCE SUPERMARKET INC.,**
a Delaware corporation; and,

**EMC NATIONAL LIFE COMPANY,**
an Iowa corporation,

                      Defendants.

Case:2:23-cv-10149
Judge: Steeh, George Caram
MJ: Ivy, Curtis
Filed: 01-19-2023 At 09:38 AM
CMP DOBRONSKI V. INSURANCE SUPERMAR
KET INC. ET AL (NA)

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1.  This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*

### **Parties**

2.  Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of and has a place of business in Orange County,

1

Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

3. Upon information and belief, Defendant INSURANCE SUPERMARKET INC. ("ISI") is a corporation organized and existing under the laws of the state of Delaware, with its principal office located at 1951 Northwest 75th Avenue, Suite 600, Miami, Florida 33136, and which is qualified to do business in the state of Michigan, with a registered office located at 2900 West Road, Suite 500, East Lansing, Michigan 48823.

4. Upon information and belief, Defendant EMC NATIONAL LIFE COMPANY ("EMC") is a corporation organized and existing under the laws of the state of Iowa, with its principal office located at 699 Walnut Street, Suite 1100, Des Moines, Iowa 50309, and which is qualified to do business in the state of Michigan, with a registered office located at 5826 Executive Drive, Lansing, Michigan 48909.

## Jurisdiction

5. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

6. This Court has limited personal jurisdiction over Defendants ISI and EMC pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur,

in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

7. Defendant ISI is licensed, pursuant to M.C.L. § 500.1201a, *et seq.*, by the MDIFS to act as an insurance producer to sell, solicit, and negotiate insurance in the state of Michigan.

8. Defendant EMC is licensed, pursuant to M.C.L. § 500.402, *et seq.*, by the Michigan Department of Insurance and Financial Services ("MDIFS") to act as an insurer and to transact insurance in the state of Michigan.

## Venue

9. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## The Telemarketing Laws

10. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robocalls" by enacting the TCPA.

11. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are

3

thousands of complaints to the FCC every month on both telemarketing and robocalls."

12. Congress explicitly found that robo-calling is an invasion of privacy.

13. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

14. According to YourMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

15. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion.

[Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

16. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

17. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

18. The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— ...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

5

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)...."

19.  Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

20.  The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

"(a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; ...

(iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the

6

prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;

(i) Is made for emergency purposes;

(ii) Is not made for a commercial purpose;

(iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

(iv) Is made by or on behalf of a tax-exempt nonprofit organization; or

(v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...

(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy,

available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance

8

transmission charges. . .

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made. . . ."

21. The TCPA implementing regulations at, 47 C.F.R. § 64.1601, additionally promulgate in relevant part:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

22. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION. **A person or entity** may, if otherwise permitted by the laws or rules of court of

a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

23. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

"No person or entity shall initiate any telephone solicitation to:...

"(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

24. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), provides for a private right of action, as follows:

> "Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or
>
> (C) both such actions.
>
> It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

25. The "do not call" proscriptions also are applicable to cellular or wireless telephone numbers, as set forth at 47 C.F.R. § 64.1200(e), which states:

> "The rules set forth in paragraph (c) and (d) in this section are applicable to any person or entity making telephone

> solicitations or telemarketing calls to wireless telephone
> numbers...."

26. The FCC has declared that telephone subscribers who have listed their

wireless telephone number on the national do-not-call list are deemed to be

"residential subscribers". See *In the Matter of Rules and Regulations Implementing*

*the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14039, ¶ 36

(2003).

27. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as

follows:

> "(2) A caller shall not use a telephone line to contact a
> subscriber at the subscriber's residence, business, or toll-
> free telephone number to do either of the following: ...
>
> (a) Deliver a recorded message for the purpose of
> presenting commercial advertising to the subscriber, unless
> either of the following occurs:
>
> (i) The subscriber has knowingly and voluntarily requested,
> consented, permitted, or authorized the contact from the
> caller.
>
> (ii) The subscriber has knowingly and voluntarily provided
> his or her telephone number to the caller.
>
> (b) Deliver or attempt to deliver intrastate commercial
> advertising if the caller activates a feature to block the
> display of caller identification information that would
> otherwise be available to the subscriber...
>
> (5) A subscriber contacted by a caller in violation of this

section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...

(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

28. Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

29. Plaintiff's residential telephone numbers are ***-1000, and ***-0222.

30. Plaintiff's cellular telephone number is ***-9671.

31. Plaintiff's residential telephone number ***-1000 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission ("FTC") pursuant to 16 C.F.R. Part 310 and have been contuiously so listed since May 27, 2022 and at all times subsequent thereto.

32. Plaintiff's residential telephone number ***-0222 is listed on the National Do Not Call Registry maintained by the FTC and has been continuously so listed since August 24, 2022 and at all times subsequent hereto.

33. Plaintiff's cellular telephone number ***-9671 is listed on the National Do Not Call Registry maintained by the FTC and has been continuously so listed since December 9, 2004 and at all times subsequent hereto.

34. By listing his residential and cellular telephone numbers on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential and/or cellular telephone numbers.

35. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

36. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26, ¶ 73 (FCC July 10, 2015) [Emphasis added].

37. Plaintiff is a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered

the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

38. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

39. At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

40. At no time has Plaintiff provided "prior express consent" or "prior express written consent" for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

41. The FCC has declared that purporting to receive consent during a call does not constitute the *prior* consent necessary to deliver the message in the first place, as the request is part of the telemarketing. See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26, 2003).

42. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting

within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

43. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

44. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual

liability, the TCPA would lose much of its force.").

45. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

46. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

47. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

48. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the

17

usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

49. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

50. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

### Allegations Specific to this Complaint

51. Defendant ISI works as an insurance broker for Defendant EMC.

52. Defendant ISI hires and authorizes third-party telemarketers to make illegal robocall to thousands of consumers *en masse* using an automatic telephone dialing system and/or prerecorded voice messages to solicit Defendant EMC's insurance products.

53. Defendant ISI approves the contracts with these third-party telemarketers.

54. Defendant ISI pays these third-party telemarketers.

55. The third-party telemarketer initiate calls to and will engage a called consumer to determine whether the consumer meets the pre-qualification criteria set

by Defendant ISI.

56. Upon pre-qualifying a consumer, the third-party telemarketer will then live transfer the call to an ISI agent who will then attempt to sell the consumer an EMC insurance product.

57. Defendant EMC is well aware of Defendant ISI's illegal behavior,but continues to allow ISI to sell life insurance policies on behalf of Defendant EMC because it benefits EMC financially.

58. In order to identify the Defendants, Plaintiff has to engage in an investigative technique termed a "canary trap", wherein Plaintiff provides false, but unique, identifying information during each received call, in particular a unique name. If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source call, is able to be made.

<u>Call 1</u>

59. On May 10, 2022, at approximately 3:02 P.M., Defendants or Defendants' third-party telemarketer, initiated a telephone call using an automatic telephone dialing system to Plaintiff's cellular telephone number ***-9671.

60. The caller identification number displayed was 734-353-0557.

61. Upon answering the telephone call, Plaintiff observed approximately a 4-5 second delay after Plaintiff said "hello", then heard a "boink" sound, and then was

19

connected to a live telemarketer who identified himself as Mario with Senior Benefits.

62. Mario then sought to pre-qualify Plaintiff for a final expense insurance plan.

63. Mario then twice attempted to live transfer the call to a "licensed agent", but received a recorded message stating that "the person at telephone number 218-618-0490 is not available, please leave a message."

64. Mario promptly stated that he would call back later and immediately hung up.

65. Immediately after the call terminated, Plaintiff dialed back telephone number 734-353-0557 and received a recorded message that the telephone number was not in service.

66. Over the past year, Plaintiff has received dozens upon dozens of telephone calls on his cellular telephone number ***-9671 from telemarketers using "spoofed" caller identification numbers and identifying themselves as being with "Senior Benefits" but wherein Plaintiff was unable to get live transferred a live insurance agent from which to identify the seller responsible for the calls. Through discovery in this matter, Plaintiff anticipates being able to identify additional calls which these Defendants are responsible for and will seek to amend this complaint.

67.   In order to better identify the source of Call 1, on May 10, 2022 at approximately 4:39 P.M., Plaintiff utilized his residential telephone line ***-1000 to dial back telephone number 218-618-0490.

68.   The call was answered by a person identifying herself as Kaydeen (phonetic) with Insurance Supermarket.

69.   Kaydeen then asked Plaintiff pre-qualifying questions and then live transferred the call to a "licensed agent" who identified himself as Cornelius Rhodes with Insurance Supermarket.

70.   Rhodes then proceeded to market a $20,000 life insurance policy with EMC National Life Company to Plaintiff.  Plaintiff provided Rhodes with controlled (false) identifying information, including the name of Thomas Clarke.

71.   At no time during the telephone conversation with Rhodes did Plaintiff state *any* telephone number.

72.   During the conversation, Plaintiff inquired of Rhodes as to the identity of the individual who had called Plaintiff earlier that identified himself as being with Senior Benefits.  Rhodes stated that Defendant ISI hires a third-party to initiate telephone calls and transfer the calls to him.

73. Plaintiff complained to Rhodes about the numerous telemarketing calls that Plaintiff had been receiving pitching final expense insurance, and inquired who he

could speak to at ISI to put a stop to the calls.

74. Rhodes said he would send a message to his boss.

75. Shortly after the telephone call terminated, Rhodes called Plaintiff back at Plaintiff's residential telephone number ***-1000 and informed Plaintiff that Rhodes' boss had placed Plaintiff's telephone number on ISI's do-not-call list and that Plaintiff would not be receiving any more calls from ISI.

76. Despite Plaintiff having expressly requested that Plaintiff's telephone number be placed on Defendant ISI's do not call list, Plaintiff received telephone calls or telephone messages to his residential telephone number ***-1000 from caller identification number 734-234-2331 and caller identification name "INSURANCE SUPERMARKET" on the following dates and times:

| Call | Date | Time | Notes |
|------|------|------|-------|
| 2 | 05/13/2022 | 2:18 PM | # |
| 3 | 05/14/2022 | 11:01 AM | # |
| 4 | 05/14/2022 | 11:02 AM | # |
| 5 | 05/16/2022 | 5:11 PM | # |
| 6 | 05/23/2022 | 10:59 AM | $ |
| 7 | 05/24/2022 | 10:22 AM | # |
| 8 | 05/24/2022 | 11:35 AM | # |
| 9 | 05/24/2022 | 4:19 PM | # |
| 10 | 05/24/2022 | 5:57 PM | # |
| 11 | 05/26/2022 | 10:19 AM | # |
| 12 | 06/01/2022 | 5:59 PM | # |
| 13 | 06/06/2022 | 12:20 PM | $ |
| 14 | 06/07/2022 | 2:30 PM | $ |
| 15 | 06/08/2022 | 2:26 PM | $ |
| 16 | 06/13/2022 | 12:33 PM | # |

| 17 | 06/13/2022 | 12:34 PM | # |
| 18 | 06/15/2022 | 12:59 PM | $ |
| 19 | 06/16/2022 | 12:22 PM | # |
| 20 | 06/16/2022 | 1:26 PM | $ |
| 21 | 06/17/2022 | 11:10 AM | # |
| 22 | 06/17/2022 | 1:33 PM | # |
| 23 | 06/17/2022 | 2:14 PM | # |
| 24 | 06/20/2022 | 12:04 PM | $ |
| 25 | 06/20/2022 | 4:32 PM | # |
| 26 | 06/21/2022 | 3:31 PM | # |
| 27 | 06/22/2022 | 10:09 AM | # |
| 28 | 06/22/2022 | 10:10 AM | # |
| 29 | 06/22/2022 | 11:20 AM | # |
| 30 | 06/23/2022 | 9:51 AM | & |
| 31 | 06/23/2022 | 2:10 PM | # |

Notes:     (#) denotes caller hung up
            ($) denotes caller left voice mail message
            (&) denotes conversation with caller

77. The repetitious nature of the calls and the frequent number of calls being abandoned immediately after being answered is indicative of an automatic telephone dialing system being utilized.

78. Where, during the course of Calls 2 through 31, Plaintiff had a conversation with the caller, the caller would ask to speak with Thomas Clarke.

79. On June 23, 2022, at approximately 9:51 A.M., during the course of Call 30, Plaintiff requested a copy of ISI's do-not-call policy. Plaintiff was never provided a copy of ISI's do-not-call policy. This evidences that ISI does not have a written do not call policy.

Call 32

80.     On August 18, 2022, at approximately 3:21 P.M., Defendants or Defendants' agent initiated a telephone call to Plaintiff's residential telephone line ***-0222 using an automatic telephone dialing system.

81.     The caller identification number displayed was 727-493-6302 and the caller identification name displayed was LAKISHA BOLDEN.

82.     Upon answering the call, Plaintiff heard a "boink" sound, then noted a delay of approximately 7 seconds, then heard a pre-recorded voice, as follows:

> "Uh, hi, my name is Dominic with, uh, Senior Benefits. How you doin' today? [Delay.] Uh, I'm good, I'm good. Thank you, thank you very much for asking. Well, this is a very short call. This call is about final expense and life insurance. But, before I proceed. How old are you? What's your age? [Delay.] Well, uh, you are perfectly qualified for the plan. Let me get my specialist on this line for you to get a quick quote. Stay on this line please.

83.     At no time during the message was there provided an automated, interactive, voice- and/or key press-activated opt out mechanism for the caller person to make a do-not-call request including a brief explanatory instruction on how to use such mechanism.

84.     Plaintiff was then live transferred to a live telemarketer who identified himself as David Brown with "Seniors Benefit Center" who then asked some pre-qualifying questions of Plaintiff.  Plaintiff provided Brown with controlled (false)

identifying information, including the name James Connors.

85. The call was then live transferred to a live telemarketer who identified herself as Doris with Insurance Supermarket, who asked some detailed pre-qualifying questions of Plaintiff.

86. Doris then live transferred the call to another agent who identified herself as Alicia Ervin, a licensed senior advisor with Insurance Supermarket. Ervin then proceeded to sell Plaintiff a $20,000 life insurance policy issued by Defendant EMC.

87. Ervin admitted that she knew that calls were initiated by ISI to consumers by use of recorded messages, that consumers are often offended by such calls, and that ISI was violating the law by doing so.

88. Plaintiff made request to Ervin for a copy of ISI's do-not-call policy, but Plaintiff was never provided a copy of said do-not-call policy.

## COUNT I
## VIOLATION OF THE TCPA - ROBOCALL

89. Plaintiff incorporates the allegations of paragraphs 1 through 88, *supra.*

90. Each of Call Numbers 1 through 32, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. 64.1200(a)(1)(iii) and/or 47 C.F.R. § 64.1200(a)(2), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's cellular telephone or residential telephone line using an automatic telephone dialing system or an artificial or prerecorded voice without the prior

express consent or prior express written consent of the called party and there being no emergency.

91. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA - CALL ABANDONMENT

92. Plaintiff incorporates the allegations of paragraphs 1 through 88, *supra*.

93. Each of Calls 2 through 5, 7 through 12, 16 through 17, 19, 21 through 23, 25 through 29, and 31 through 32, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7), as the call was not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

94. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT III
## VIOLATION OF THE TCPA - FAILURE TO IDENTIFY

95. Plaintiff incorporates the allegations of paragraphs 1 through 88, *supra*.

96. Each of Calls 2 through 5, 7 through 12, 16 through 17, 19, 21 through 23, 25 through 29, and 31 through 32, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(A), as the caller did not state the

name of the business or entity on whose behalf the call was placed, and a telephone number for such business or entity.

97. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT IV
## VIOLATION OF THE TCPA - NO OPT-OUT

98. Plaintiff incorporates the allegations of paragraphs 1 through 88, *supra*.

99. Each of Calls 2 through 5, 7 through 12, 16 through 17, 19, 21 through 23, 25 through 29, and 31 through 32, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(B), as the caller did not provide an automated, interactive voice- and/or key-press activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call.

100. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT V
## VIOLATION OF THE TCPA - DO NOT CALL

101. Plaintiff incorporates the allegations of paragraphs 1 through 88, *supra.*

102. Call 1 was in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his

telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

103. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

### COUNT VI
### VIOLATION OF THE TCPA - INTERNAL DO NOT CALL

104. Plaintiff incorporates the allegations of paragraphs 1 through 88, *supra.*

105. Each of Calls 3 through 31, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(3), as Defendants and/or Defendants' agents failed to honor Plaintiff's do-not-call request.

106. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

### COUNT VII
### VIOLATION OF THE TCPA - NO DNC POLICY

107. Plaintiff incorporates the allegations of paragraphs 1 through 88, *supra.*

108. Each of Calls 1 through 32, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(1), as Defendants and/or Defendants' agents failed to have a written do not call policy, available upon demand, for maintaining a do-not-call list.

109. The aforesaid violations of the TCPA were wilful and/or knowing as is

evidenced by the repeated number of calls.

## COUNT VIII
## VIOLATION OF THE TCPA - FALSIFIED CALLER ID

110. Plaintiff incorporates the allegations of paragraphs 1 through 88, *supra.*

111. Calls 1 and 32 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours; and, additionally, the caller identification information did not include the name of the telemarketer or the seller on whose behalf the telemarketing call was placed.

112. The Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT IX
## VIOLATION OF THE MTCCCA

113. Plaintiff incorporates the allegations of paragraphs 1 through 88, *supra.*

114. Each of Calls 1 through 31, inclusive, were in violation of the of the MTCCCA, specifically M.C.L. § 484.125(2)(a), as Defendant or Defendant's agent used a telephone line to contact a subscriber at the subscriber's residence to deliver

a recorded message for the purpose of presenting commercial advertising and the subscriber having not requested, consented, permitted, or authorized the contact; or M.C.L. 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severallyu, as follows:

A.   Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I | 32 |
| II | 23 |
| III | 23 |
| IV | 23 |
| V | 1 |
| VI | 29 |
| VII | 32 |
| VIII | 2 |

A total of 187 violations at $500.00 per violation for damages of $94,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $282,000.00.

B. Damages for violations of the MTCCCA alleged at Count IX: 31 violations at $1,000.00 per violation, for total damages of $31,000.00.

The cumulative total amount of damages claimed in this action is $313,000.00, and in the event of default judgment is the sum certain damages amount that will be sought.

C. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

D. An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's telephone lines.

E. Interest accruing from the date of filing until paid at the statutory rate; and,

F. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: January 17, 2023

_____

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: Washtenaw, MI

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

**(b)** County of Residence of First Listed Plaintiff  Washtenaw, MI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

## DEFENDANTS

INSURANCE SUPERMARKET INC., and
EMC NATIONAL LIFE COMPANY

County of Residence of First Listed Defendant  Miami-Dade. FL
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government
Plaintiff
- [x] 3  Federal Question
*(U.S. Government Not a Party)*
- [ ] 2  U.S. Government
Defendant
- [ ] 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | | | [ ] 862 Black Lung (923) | |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 USC 227

Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 313,000.00

CHECK YES only if demanded in complaint:

JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE
January 17, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?       ☐ Yes
                                                                                                        ■ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously       ☐ Yes
                discontinued or dismissed companion cases in this or any other    ■ No
                court, including state court? (Companion cases are matters in which
                it appears substantially similar evidence will be offered or the same
                or related parties are present and the cases arise out of the same
                transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :

**MARK W. DOBRONSKI**
**POST OFFICE BOX 85547**
**WESTLAND, MICHIGAN 48185-0547**
**(734) 330-9671**
**markdobronski@yahoo.com**

January 17, 2023

United States District Court
Attn: Clerk's Office
231 West Lafayette Boulevard, 5th Floor
Detroit, Michigan 48226-2700

      Re:   NEW FILING
            Mark W. Dobronski v. Insurance Supermarket Inc., *et al.*

Dear Sir or Madam:

    Enclosed please find:

- Check number 5129, in the amount of $402.00, representing the filing fee required for the above-case;

- Civil Cover Sheet

- Complaint; and,

- Five (5) Summonses   *only 2 summonses provided for Insurance Market, Inc. (NM)*

    Please file the complaint in your usual course and return signed Summonses to the attention of the undersigned.

    Thank you for your attention to this matter.

              Very truly yours,

              Mark W. Dobronski



**UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL®**

**P**

US POSTAGE PAID

**$9.90**

Origin: 48130
01/17/23
2525100130-05

Retail

PRIORITY MAIL®

0 Lb 8.40 Oz

RDC 22

C052

EXPECTED DELIVERY DAY: 01/18/23

SHIP
TO:
231 W LAFAYETTE BLVD
FL 5TH
DETROIT MI 48226-2777

USPS TRACKING® #

9505 5123 0461 3017 0189 02

2020
x 9 1/2

RECEIVED
JAN 19 2023
CLERK'S OFFICE
U.S. DISTRICT COURT

U.S. MARSHAL

FROM:
MARK W DOBRONSKI
PO BOX 99547
WESTLAND, MI 48185-0547

TO:
UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.