UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MARK W. DOBRONSKI, | Case No.  23-cv-10149 |
| Plaintiff, | Honorable Susan K. DeClercq<br>United States District Judge |
| v. | |
| INSURANCE SUPERMARKET INC. and EMC NATIONAL LIFE COMPANY, | Honorable Curtis Ivy, Jr.<br>United States Magistrate Judge |
| Defendants. | |

_____

**PLAINTIFF'S OBJECTIONS TO
REPORT AND RECOMMENDATION ON
DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Fed. R. Civ. P. 72(b)(2) and E.D. Mich. Local Rule 72.1(d), Plaintiff Mark W. Dobronski submits these written objections to *Report and Recommendation on Defendants' Motion for Summary Judgment (ECF No. 74)* [ECF No. 79] ("R&R").

## <u>Background</u>

The Statement of Disputed and Undisputed Facts set forth in the R&R [ECF No. 79, PageID.1521-1526], albeit abbreviated, is more or less accurate and need not be repeated here.

1

## Objections

**Objection No. 1:** Plaintiff objects to the recommendation that there was no agency relationship between "Senior Benefits" and ISI and, thus, ISI cannot be held liable for Call 1. [ECF No. 79, PageID.1538].

The R&R expressly recites that "[t]he evidence that does exist relevant to this question does not establish apparent authority" [ECF No. 79, PageID.1533], and then footnotes that "Plaintiff included allegations in the complaint to show the relationship between ISI and the telemarketer… [but t]he complaint is unverified which means it is not evidence that can be used to defeat a motion for summary judgment." [ECF No. 79, PageID.1533, n. 2]. The Magistrate Judge is misstaken. In fact, in that motion response, Plaintiff included a declaration under penalty of perjury stating:

> "I authored the Complaint filed in this matter, and know the contents thereof, and the facts set forth therein are true and correct to the best of my information, knowledge, and belief, except as to those facts recited to be upon knowledge and belief, and as to those I believe them to be true."

[ECF No. 75, PageID.1407, ¶ 4]. Accordingly, the Magistrate Judge erred by refusing to consider the facts alleged in the Complaint.

The Magistrate Judge notes in the R&R that there is no evidence "that ISI held Senior Benefits out to third parties as having authority to act on ISI's behalf." Not true! In the Complaint, it was expressly alleged:

> "During the conversation, Plaintiff inquired of Rhodes as to the identify of the individual who had called Plaintiff earlier

2

> that identified himself as being with Senior Benefits. Rhodes stated that Defendant ISI hired a third-party to initiate telephone calls and transfer the calls to him."

[ECF No. 1, PageID.21, ¶ 72].

Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations. Restatement (Third) Of Agency § 2.03 (2006). Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal. *Id.*, comment c. As to the third person, apparent authority when present trumps restrictions that the principal has privately imposed on the agent. *Id.* The relevant appearance is that the principal has conferred authority on an agent. *Id.* Apparent authority is distinct from the circumstances of an agency relationship known to agent and principal, which may not be observable by a third party, even though the course of dealing between agent and principal will often be observed at least in part by third parties. *Id.* A principal may not choose to act through agents whom it has clothed with the trappings of authority and then determine at a later time whether the consequences of their acts offer an advantage. *Id.* The FCC has expressly recognized these indicia of apparent authority as a basis for vicarious liability. *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6586, 2013 WL 1934349, at *11, ¶ 34 n.102 (FCC, May 9, 2013).

The FCC has held:

> "[A] seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct."

[*Id.*, 28 FCC Rcd. At 6592, 2013 WL 1934349, at *15, ¶ 46]. Further,

> "[W]e see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised."

[*Id.*, 28 FCC Rcd. at 6593, 2013 WL 1934349, at *15, ¶ 47].

As to Call 1, Rhodes expressly acknowledged that the individual who had called Plaintiff earlier identifying himself as being with Senior Benefits was hired by ISI to initiate telephone calls and transfer the calls to Rhodes. [ECF No. 1, PageID.21, ¶ 72]. These facts are sufficient for purposes of establishing apparent authority.

For the reasons set forth, *supra*, Plaintiff submits that there is q question of fact as to whether there was an agency relationship between "Senior Benefits" and ISI and, thus, whether ISI can be held vicariously liable.

**Objection No. 2:** Plaintiff objects to the recommendation that Count I should be dismissed as to Calls 1-31 because there is no evidence about Calls 1-31

concerning an automated telephone dialing system ("ATDS") or prerecorded messages. [ECF No. 79, PageID.1539].

Once again, the Magistrate Judge has failed to consider the evidence of ATDS use appearing in the Complaint because of his position that the Complaint is "unverified."

As to Call 1, the Complaint expressly alleged:

> "Upon answering the telephone call, Plaintiff observed approximately a 4-5 second delay after Plaintiff said 'hello', the heard a 'boink' sound, and then was connected to a live telemarketer who identified himself as Mario with Senior Benefits."

[ECF No. 1, PageID.19-20, ¶ 61]. Thus, use of an ATDS has been plausibly evidenced. *See Dobronski v. Family First Life, LLC*, 2024 WL 1342668, at *13 (E.D.Mich., 2024) ("Dobronski plausibly alleges indicators of ATDS (a several second delay after saying hello before a telemarketer came on the line)").

As to Calls 2 through 31, the Complaint expressly alleged:

> "The repetitious nature of the calls and the frequent number of calls being abandoned immediately after being answered is indicative of an automatic telephone dialing system being utilized."

[ECF No. 1, PageID.23, ¶ 77]. The fact that ISI's Rua has made a *carefully worded* declaration that ISI does not use ATDS "in the ordinary course of business, does not use an ATDS to place marketing or sales calls, and does not authorize another entity

5

to use such a system on its behalf" [ECF No. 79, PageID.1538 citing ECF No. 74-7, PageID.1249, ¶ 22], merely adds a controverted question of fact for the jury to consider. Rua did not assert that ISI does not use ATDS at all; did not assert that an ATDS was not used in Calls 2 through 31; and does not deny that others use ATDS on ISI's behalf, merely that they are allegedly not authorized to do so. The fact that Call 32 – which was commenced with a pre-recorded message – clearly evidences the lack of candor in Rua's declaration. *See* ECF No. 1, PageID.24, ¶ 82. Call 32 clearly was initiated using automatic telephone dialing system, and ISI's Doris Ervin cheerfully accepted the live transfer call and acknowledged that she knew that calls were initiated to consumers by use of recorded messages.

For the reasons set forth, *supra*, Plaintiff submits that Count I should not be dismissed.

**Objection No. 3:** Plaintiff objects to the recommendation that Count II should be dismissed because Plaintiff has cited no authority suggesting that the abandonment rate is an affirmative defense. [ECF No. 79, PageID.1542].

In the R&R, the Magistrate Judge agrees that "the FCC considers the 3% abandonment rate a 'safe harbor.'" [ECF No. 79, PageID.1542]. The Magistrate Judge goes on further to acknowledge that "[i]f the abandonment rate were an affirmative defense, there would be nothing for a plaintiff to prove on a claim for

6

violation of (a)(7)... The subsection does not suggest that the burden of proof on abandonment lies with the entity." [ECF No. 79, PageID.1543]. The Magistrate Judge apparently failed to read the entire subsection of the cited regulation, which clearly promulgates at 47 C.F.R. § 64.1200(a)(7)(iii): "The seller or telemarketer must maintain records establishing compliance with paragraph (a)(7) of this section."

Section 64.1200(a)(7) clearly sets forth affirmative record keeping requirements. If an entity subject to the rule were to fail to comply with these requirements, that failure could, standing alone, constitute a law violation carrying a penalty. An entity subject to the TCPA – here, ISI – must create and maintain the specific records and retain them after creation. The record keeping requirements provides a means of exculpation in situations where an entity is believed to be or has been in violation of the call abandonment provisions of Section 64.1200(a)(7). *See, generally,* FTC Staff Advisory Opinion to Ms. Kristen Marshall, 2008 WL 11279210. at *2 (FTC, April 15, 2008). The burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions. *Schaffer v. Weast*, 546 U.S. 49, 57, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). The burden of proving affirmative defenses rests with the defendant, and that reality stretches from criminal law to civil law, and from Blackstone to the present. *United States v. Williams*, 70 F.4th 359, 364

7

(6th Cir. 2023).

The fact that ISI has an call abandonment rate in excess of 3 percent is clearly inferred in the Complaint by virtue of the fact that 23[1] of the 32 calls were abandoned – specifically, Calls 2-5, 7-12, 16-17, 19, 21-23, 25-29, and 31-32. [ECF No. 1, PageID.26, ¶ 93].  The burden now rests with ISI to produce its records establishing that it has complied with paragraph (a)(7).

For these reasons, Count II should not have been dismissed.

**Objection No. 4:** Plaintiff objects to the recommendation that Count V should be dismissed because "Plaintiff did not establish an agency relationship between ISI and Senior Benefits when Senior Benefits initiated Call 1." [ECF No. 79, PageID.1545].

Plaintiff has demonstrated, in support of his Objection No. 1, *supra*, that there was an agency relationship between ISI and Senior Benefits.

Accordingly, Count V should not be dismissed.

**Objection No. 5:** Plaintiff objects to the recommendation that Count VI should be dismissed. [ECF No. 79. PageID.1548].

Whether a telephone call is "telemarketing" is a question of fact.  The Magistrate Judge expressly states "ISI insists that these telephone calls were not made

---

[1] Even the Magistrate Judge in the R&R expressly noted that there were 23 calls alleged to have been abandoned. [ECF No. 79, PageID.1540].

8

for 'telemarketing purposes;' rather they were telephone calls following up on Plaintiff's fictitious purchase of an insurance policy. Since they were not telemarketing calls, ISI says there is no TCPA violation." [ECF No. 79, PageID.1546].

At his deposition, Rua testified:

> Q: Was the purpose of the calls from the retention department have been to encourage the purchase or investment in the goods or services which ISI was trying to sell?
>
> . . .
>
> A: It – it's one of the reasons. It's one of the reasons.

[ECF No. 75, PageID.1419, lines 5-11]. The TCPA defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).

By Rua's own testimony, one of the reasons for the calls from the retention department was to "encourage the purchase or investment in the goods or services which ISI was trying to sell." In the R&R, the Magistrate Judge speculates that "the ISI representative likely wanted to obtain accurate payment information . . . ." [ECF No. 79, PageID.1547]. The Magistrate Judge's speculation is not evidence. But, even so, obtaining payment information certainly falls within the "encourage the

9

purchase or investment in property, goods, or services" scope of the definition of telemarketing.

It is beyond dispute that, during the call with Cornelius Rhodes on May 10, 2022, Plaintiff made a clear and express "do not call" demand, and that "Rhodes called Plaintiff back at Plaintiff's residential telephone number ***-1000 and informed Plaintiff that Rhode's boss has placed Plaintiff's telephone number on ISI's do-not-call list and that **Plaintiff would not be receiving any more calls from ISI.**" [ECF No. 1, PageID.22, ¶ 75] (emphasis added).

47 C.F.R. § 64.1200(f)(5)(i) promulgates:

> "The subscriber's seller-specific do-not-call request, as set forth in paragraph (d)(3) of this section, terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller."

By Plaintiff making a do-not-call request to ISI, that request immediately terminated any established business relationship with ISI. If, as the Magistrate Judge speculates, the purpose of the calls was to obtain payment information, that certainly would constitute "encouraging the purchase or investment in property, goods, or services" and, thus, fall within the TCPA's proscriptions. Seeking payment is a commercial activity because it involves the exchange of goods or services for compensation.

It is uncontroverted that the purpose behind Calls 2 through 31 was to win back

10

Plaintiff's business. Win back calls are telemarketing and require prior express written consent. *Bradley v. DentalPlans.com*, 2024 WL 2865075, at *6 (D.Md., 2024).

Whether or not Calls 2 through 31 were telemarketing is a question of fact for the jury to decide.

Accordingly, Count VI should not be dismissed.

**Objection No. 6:** Plaintiff objects to the recommendation that Count VIII should be dismissed as to Call 1. [ECF No. 79. PageID.1548].

In the R&R, the Magistrate Judge finds "that § 64.1601(e) was promulated to enforce § 227(c), so Plaintiff has a private right of action to bring a claim for violation of the regulation." [ECF No. 79, PageID.1553].

However, the Magistrate Judge also concluded that "this claim should be dismissed as to Call 1 because Plaintiff did not establish an agency relationship between ISI and the entity that initiated the call, Senior Benefits." [ECF No. 79, PageID.1551].

Plaintiff has demonstrated, in support of his Objection No. 1, *supra*, that there was an agency relationship between ISI and Senior Benefits.

Accordingly, Count VIII should not be dismissed as to Call 1.

**Objection No. 7:** Plaintiff objects to the recommendation that Count IX – the

11

MTCCCA claim – should be dismissed.

In the R&R, the Magistrate Judge recommended that the "violation of subsection (2)(a) should be dismissed" because "Plaintiff citing nothing to support his claim that making a do-not-call request terminated the business relationship with ISI when he did not also rescind his fictitious purchase of the insurance policy." [ECF No. 79, PageID.1554]. The Magistrate Judge also recommended that the violation under subsection 2(b) should be dismissed because "Michigan does not require that the caller identification information enable the called person to return the call and make a do-not-call request." [ECF No. 79, PageID.1555-1556].

M.C.L. § 484.125 promulgates, in relevant subpart:

> "(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following:
>
> (a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:
>
> > (i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.
> >
> > (ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.
>
> (b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would

12

otherwise be available to the subscriber."

We first will look at Calls 6, 13, 14, 15, 18, 20, and 24. It is uncontroverted that "an ISI employee left voicemail for Plaintiff to follow-up on the insurance policy he attempted to purchase with fake information." [ECF No. 79, PageID.1554]. ISI argues that Plaintiff consented to receive them, that the calls were not made for advertising purposes. [ECF No. 74, PageID.1168].

First, nowhere has ISI demonstrated that Plaintiff "knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller." In fact, Plaintiff expressly denies doing so. *See* ECF No. 1, PageID.15, ¶ 38. Nor is there any evidence that Plaintiff ever "knowingly and voluntarily provided his or her telephone number" to ISI. Indeed, in the Complaint, Plaintiff expressly denies providing *any* telephone number. *See* ECF No. 1, PageID.21, ¶ 71. Plaintiff presumes that ISI obtained Plaintiff's -1000 telephone number via caller identification. But, even so, during that very same call, Plaintiff expressly made a "do not call" demand to ISI's agent, Cornelius Rhodes [ECF No. 1, PageID.21-22, ¶ 73] and Rhodes confirmed that Plaintiff's telephone number had been put "on ISI's do not call list and that Plaintiff would not be receiving any more calls from ISI." [ECF No. 1, PageID.22, ¶ 75]. Obtaining a telephone number via caller identification certainly is not "knowing and voluntary" conduct on the part of Plaintiff. Further, the FCC has

13

declared that capturing a caller's telephone number by a Caller ID or ANI device cannot be considered consent to receive telemarketing calls. *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at *11, ¶ 31 (1992).

The Magistrate Judge notes that "the recorded messages reveal that the telephone calls were not for commercial advertising purposes." [ECF No. 79, PageID.1554]. The term "advertising" is not defined in the relevant statute, so we must turn to the dictionary. Black's Law Dictionary (10th ed. 2014) provides the following definition for "advertising": "The action of drawing the public's attention to something to promote its sale." The transcriptions of the recorded messages which were provided at ECF No. 74-10, PageID.1263 clearly reveal that in each instance the caller was calling to "follow up... regarding the life insurance policy that you have with us with EMC." During Call 30, "Alex" was calling wanting Plaintiff to make a payment on the life insurance policy. [ECF No. 79, PageID.1547]. Certainly, calling Plaintiff to seek payment is "drawing [one's] attention to something to promote its sale."

The Magistrate Judge assets that "Plaintiff cites nothing to support his claim that making a do-not-call request terminated the business relationship with ISI when he did not also rescind his fictitious purchase of the insurance policy." [ECF No. 79,

14

PageID.1554]. As Plaintiff points out in his Objection No. 5, *supra*, by Plaintiff making a do-not-call request to ISI, that request immediately terminated any established business relationship with ISI. See 47 C.F.R. § 64.1200(f)(5)(i).

As to whether there was a violation of subsection 2(b), the statute expressly proscribes a caller to "block the display of caller identification information that would otherwise be available to the subscriber." Under federal law, a telemarketer is required to transmit caller identification number and name information. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours. *See* 47 C.F.R. § 64.1601(e). Michigan law also has a similar requirement. A telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made. *See* M.C.L. § 445.111b.

By failing to provide proper caller identification information, the caller interfered with Plaintiff's ability to be able to make a do-not-call demand to the caller.

Accordingly, Count IX should not be dismissed.

**Objection No. 8:** Plaintiff objects to the recommendation that Plaintiff should

15

be limited to recovering damages once per call for each violation of the TCPA §§ 227(b) and (c). [ECF No. 79,PageID.1556].

The Magistrate Judge relies upon *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 631-33 (6th Cir. 2009) and *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) in recommending that Plaintiff is "permitted to recover only once per call for each violation of §§ 227(b) and (c), thus at most recovering twice per call." [ECF No. 79, PageID.1556]. However, the *GVN Mich*. Case only considered the issue of whether there could be multiple recoveries for a call in violation of § 227(c). The *NMP, LLC* case only considered the issue of whether there could be recoveries for one call for violations of § 227(b) and § 227(c). Neither cited case analyzed whether there could be a recovery for multiple violations for a call under § 227(b).

47 U.S.C. § 227(b)(3) promulgates:

> "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions."

16

47 U.S.C. § 227(c)(5) promulgates:

> "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State--
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions."

Putting the two statutory subsections side-by-side, it is immediately apparent that the two are similar but not identical. § 227(b)(3) provides that "a violation of this subsection or the regulations prescribed under this subsection" allows a plaintiff "to receive $500 in damages for each such violation." However, § 227(c)(5) is prefaced that a plaintiff "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may "receive up to $500 in damages for each such violation."

In *GVN Mich.*, the Sixth Circuit expressly noted, relative to § 227(c):

> "'[E]ach such violation' cannot refer to the phrase "in violation of the regulations," because this phrase is not a noun but a prepositional phrase modifying the noun "call." Therefore, the term "each such violation" must refer to

17

> "telephone call ... in violation of the regulations," and damages are awardable on a per-call basis."

*Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 (6th Cir. 2009). However, neither the term "call" nor "telephone call" appear in the statutory language of § 227(b). Accordingly, in § 227(b), the term "each such violation" is not limited to being "per-call"; instead, the term "each such violation" refers back to "a violation of this subsection or the regulations prescribed under this subsection."

Every word within a statute is there for a purpose and should be given its due significance. This fact only underscores our duty to to refrain from reading a phrase into a statute when Congress has left it out. Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. *Russello v. U.S.*, 104 S.Ct. 296, 300, 464 U.S. 16, 23 (1983). Had Congress intended to restrict a violation under § 227(b) to being on a "per-call" basis, it presumably would have done so expressly as it did in the immediately following subsection (c). We must refrain from concluding that the differing language in the two subsections has the same meaning in each. We cannot presume to ascribe this difference to a simple mistake in draftsmanship.

In plain terms, the Section 227(b)(3) allows a person to recover "$500 in damages for each" "violation of this subsection." 47 U.S.C. § 227(b)(3). Section

227(b) has no language limiting the recovery to $500 per "call" or "fax." *See Lary v. Trinity Physician Financial & Ins. Services*, 780 F.3d 1101, 1106 (11th Cir. 2015) (holding that plaintiff could recover for multiple violations arising under Section 227(b) from the same call).

Accordingly, Plaintiff submits that a plaintiff is not limited to recovering damages once per call for each violation of said subsection or the regulations prescribed under said subsection of TCPA § 227(b).

## Conclusion

WHEREFORE, for the reasons set forth, *supra*, Plaintiff urges that Plaintiff's objections be sustained as to the indicated recommendations in *Report and Recommendation on Defendants' Motion for Summary Judgment* (ECF No. 74).

Respectfully submitted,

Date: August 15, 2025

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

19

## CERTIFICATE OF SERVICE

      I hereby certify that on **August 15, 2025**, I electronically filed the foregoing *Plaintiff's Objections to Report and Recommendation on Defendants' Motion for Summary Judgment (ECF No. 74)* with the Clerk of the Court via the Court's Pro Se Document Upload utility, which will send notification of such filing to all counsel of record via the CM/ECF system, and additionally a copy to the Magistrate Judge by sending same in a sealed envelope, with first class postage fully prepaid thereupon, and deposited in the United States Mail, addressed as follows:

      Honorable Curtis Ivy, Jr.
      United States Magistrate Judge
      United States District Court
      600 Church Street, Room 112
      Flint, Michigan 48502-1214

_____
Mark W. Dobronski

20